IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAYBELL QUANTUM INDUSTRIES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. ) |
| OXFORD INSTRUMENTS PLC and OXFORD INSTRUMENTS NANOTECHNOLOGY TOOLS LTD., | ) **JURY TRIAL DEMANDED** ) ) ) |
| Defendants. | ) ) |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Maybell Quantum Industries, Inc. ("Maybell Quantum" or "Plaintiff") brings this civil action against Defendants Oxford Instruments PLC and Oxford Instruments Nanotechnology Tools Ltd. (collectively, "Oxford Instruments" or "Defendants").

**NATURE OF SUIT**

1. This is a civil action for patent infringement under the laws of the United States, 35 U.S.C. § 1, *et seq*.

2. Defendants have infringed and continue to infringe one or more claims of U.S. Patent No. 12,313,320 (the "'320 Patent" or the "Asserted Patent") at least by making, importing, using, selling, and/or offering for sale in the United States devices that infringe one or more claims of the '320 Patent.

3. Maybell Quantum is the legal owner by assignment of the entire right, title, and interest in and to the Asserted Patent, which was duly and legally issued by the United States Patent and Trademark Office ("USPTO"). Maybell Quantum seeks injunctive relief and monetary damages to address past and ongoing infringement of its valuable intellectual property.

## THE PARTIES

4. Maybell Quantum is a corporation organized under the laws of the State of Delaware, with a place of business at 7100 Broadway, Building 3, Suite D-E, Denver, CO 80221.

5. Oxford Instruments PLC is a corporation registered in England with Company Number 775598 and has an address listed as Tubney Woods, Abingdon, Oxon, OX13 5QX, England.

6. Oxford Instruments Nanotechnology Tools Ltd. is a corporation registered in England with Company Number 704320 and has an address listed as Tubney Woods, Abingdon, Oxon, OX13 5QX, England. Oxford Instruments Nanotechnology Tools Ltd. is a wholly owned subsidiary of Oxford Instruments PLC.

## JURISDICTION AND VENUE

7. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8. This Court may exercise jurisdiction over Defendants pursuant to Rule 4(k)(2) of Federal Rules of Civil Procedure. Maybell Quantum's patent infringement claims arise under federal law, and Defendants Oxford Instruments PLC and Oxford Instruments Nanotechnology Tools Ltd. have sufficient contacts with the United States as a whole, including by making, using, offering to sell, selling, and/or importing products that infringe the '320 Patent with the

intent and effect that such products will be available for sale throughout the United States, such that this Court's exercise of jurisdiction satisfies due process.[1]

9. Venue is proper in this District under 28 U.S.C. § 1391(c). Defendants are not residents of the United States and accordingly may be sued in any judicial district.

## BACKGROUND

10. Dilution refrigerators are cryogenic devices that rely on the heat of mixing of helium isotopes to provide cooling down to temperatures near absolute zero (between approximately 1.0 and 0.001 Kelvin). Dilution refrigerators are used in a variety of applications requiring these extremely low temperatures. For example, dilution refrigerators can be used to support quantum computing (*e.g.*, superconducting quantum computing technologies and qubits) and low-temperature condensed matter physics research, among other applications.

11. Classic dilution refrigerators, or "wet" dilution refrigerators, precool the helium mixture using liquid nitrogen before further cooling of the mixture below 4 Kelvin. More recently, "dry" or "cryogen-free" dilution refrigerators precool the helium mixture using devices such as a cryocooler rather than cryogenic liquid baths.

12. Conventional dilution refrigerators also typically occupy a large footprint, which may be prohibitive for applications requiring multiple dilution refrigerators. For example, a single conventional dry dilution refrigerator typically requires approximately 300 square feet and ceiling heights between 12 and 14 feet. This space is occupied not only by the dilution refrigerator itself but is also required to support any auxiliary systems such as pumps, compressors, water cooling systems and/or cryocooler systems.

---

[1] *See, e.g.*, https://thequantuminsider.com/2025/04/23/oxford-instruments-nanoscience-installs-two-of-its-largest-modular-dilution-refrigerators/.

13. The inventors at Maybell Quantum recognized that the quantum technology industry needed a new reliable, easy-to-use, easy-to-maintain, and compact dilution refrigerator. They also realized that, for quantum computing and other quantum technologies to be easily scalable, a complete shift in design was required. The inventors developed dilution refrigerators and distributed cooling systems that can be integrated with commercially available server rack infrastructure (*e.g.*, 19-inch server racks) and easily maintained.

14. Maybell Quantum is the current owner by assignment of the entire right, title, and interest in and to the '320 Patent titled, "Integrated Dilution Refrigerators." The '320 Patent issued on May 27, 2025. The '320 Patent is directed to a dilution refrigerator comprising: an outer vacuum chamber including at least one substantially planar surface and an opening in the at least one substantially planar surface configured to provide access to an interior of the outer vacuum chamber. A copy of the '320 Patent is attached as Exhibit A. Such an opening is configured to provide access experimental volume disposed within an interior of the outer vacuum chamber and may be hermetically sealed with a hinged door. Such features addressed deficiencies of prior dilution refrigerators and allowed much needed scalability.

15. Maybell Quantum has complied with its obligations under 35 U.S.C. § 287 for the Asserted Patent.

16. The allegations provided below are exemplary and without prejudice to Maybell Quantum's infringement contentions. In providing these allegations, Maybell Quantum does not convey or imply any particular claim constructions or the precise scope of the claims. Maybell Quantum's claim construction contentions regarding the meaning and scope of the claim terms will be provided under the Court's scheduling order and local rules.

17. Details of Accused Products are provided through a publicly available augmented reality application. Oxford Instruments advertises its ProteoxQX systems ("Accused Products") at least through the online Google Play and Apple Play stores.[2] This augmented reality app purports to be an accurate depiction of the Accused Products and allows one to view Oxford Instruments's cryogenic systems in life size, providing "the opportunity to place them in your lab space and see how they fit, get up close to different components within the system and envisage how you will fit your experiments on the different temperature stages."[3] Regarding the Accused Products in particular and through this augmented reality app, "you can see the fully accessible sample space that only this shape of large dilution refrigerator will give you, with doors and easily removable radiation shields allowing you full access to the mixing chamber sample space."[4]

18. Additionally, Oxford Instruments also associates the design of the Accused Products to the disclosures of U.S. Patent No. 12,320,557 ("the '557 Patent"), and in particular Figure 12.[5] Thus, on information and belief, the '557 Patent also describes features of the Accused Products.

19. On information and belief, the infringing products include without limitation: a dilution refrigerator comprising: an outer vacuum chamber including at least one substantially planar surface and an opening in the at least one substantially planar surface configured to provide access to an interior of the outer vacuum chamber.

---

[2] *See, e.g.*, https://apps.apple.com/us/app/explore-proteox/id6477702161; https://play.google.com/store/apps/details?id=com.YourCompany.ExploreProteox&hl=en_US.

[3] https://apps.apple.com/us/app/explore-proteox/id6477702161.

[4] *Id*.

[5] *See* https://nanoscience.oxinst.com/resources/blog/connected-dilution-refrigerators-for-scalable-quantum-computing.

20. On information and belief, the Accused Products further comprise a sample stage housed within the experimental volume, wherein the opening is configured to provide access to the sample stage through the outer vacuum chamber.

21. On information and belief, the Accused Products further comprise at least one substantially planar surface, including first surfaces disposed within a plane perpendicular to a plane of a floor supporting the dilution refrigerator; and second surfaces disposed within a plane parallel to the plane of the floor, wherein the first surfaces and the second surfaces are arranged as a rectangular prism.

22. On information and belief, the opening of the Accused Products further comprises a hermetic opening.

23. On information and belief, the Accused Products constitute dilution refrigerators comprising: an outer vacuum chamber comprising an outer housing having at least one substantially planar surface; and an opening in the at least one substantially planar surface of the outer housing configured to provide access to an experimental volume disposed within an interior of the outer vacuum chamber, wherein the at least one substantially planar surface of the outer housing comprises a first surface disposed within a plane perpendicular to a plane of a floor supporting the dilution refrigerator.

24. On information and belief, the Accused Products constitute dilution refrigerators comprising: an outer vacuum chamber comprising an outer housing having at least one substantially planar surface; and an opening in the at least one substantially planar surface configured to provide access to an interior of the outer vacuum chamber, wherein the opening comprises a hinged door.

25. Oxford Instruments benefits from these infringed patented features. For example, Oxford Instruments touts a "defining feature" of the Accused Products as being "its modular architecture."[6] According to Oxford Instruments's website, the Accused Products were "born out of many conversations about scalability and flexibility."[7] It asserts that its modular design is "unique" and that the Accused Products have a removable side-loading insert that offers time-savings and maximum uptime, "allowing for scalability" from prototyping to full-scale implementation.[8] This "scalability is one of the key features of its design, with a fully accessible workspace measuring over 3 m tall and over 1.5 m wide."[9] However, these advantages are not unique; they are described by and resulting from the novel designs of Maybell Quantum's '320 Patent.

26. The Accused Products are non-limiting examples that were identified based on publicly available information, and Maybell Quantum reserves the right to identify additional infringing activities and products, including, for example, on the basis of information obtained during discovery.

27. As detailed below and in Exhibit B, each limitation of at least one claim of the Asserted Patent is literally present in the Accused Products, or is literally practiced by Defendants' personnel, agents, or customers who use the Accused Products. To the extent that any limitation is not literally present or practiced, each such limitation is present or practiced under the doctrine of equivalents.

---

[6] *See* https://nanoscience.oxinst.com/resources/blog/introducing-proteoxQX-our-largest-modular-dilution-refrigerator-system.

[7] *Id.*

[8] *See* https://www.oxinst.com/news/oxford-instruments-nanoscience-installs-two-of-its-largest-modular-dilution-refrigerators/.

[9] *Id.*

28. As set forth above, Defendants have made use of Maybell Quantum's patented technologies, including the technology described and claimed in the '320 Patent.

## COUNT I

### (Infringement of U.S. Patent No. US 12,313,320)

29. Maybell Quantum incorporates by reference and realleges all the foregoing paragraphs of the Complaint as if fully set forth herein.

### Direct Infringement

30. Oxford Instruments has directly infringed and continue to directly infringe, literally and/or equivalently, one or more claims of the '320 Patent, including at least claim 1, including by making, importing, using, selling, and/or offering for sale in the United States the Accused Products.

31. For example, and without limitation, Defendants' devices including their ProteoxQX dilution refrigerator meets each and every limitation of claim 1 either literally or under the doctrine of equivalents, as set forth in Exhibit B and incorporated here. On information and belief, at least one ProteoxQX dilution refrigerator as described in Exhibit B has been imported into and sold by Defendants in the United States for use in the United States.[10]

### Knowledge of the '320 Patent

32. Since at least as early as the service of this Complaint, Oxford Instruments has known of the '320 Patent. Accordingly, Defendants' infringement as alleged herein is and has been willful.

---

[10] *See, e.g.*, https://thequantuminsider.com/2025/04/23/oxford-instruments-nanoscience-installs-two-of-its-largest-modular-dilution-refrigerators.

**Induced Infringement**

33. Since at least as early as the service of this Complaint, Oxford Instruments has known that the Accused Products infringe at least claim 1 of the '320 Patent when used by customers or other users, when imported by others, and when sold or offered for sale by its subsidiaries or other third parties.

34. Since at least as early as the service of this Complaint, Defendants have induced infringement and continue to induce infringement by actively encouraging customers and/or other users to directly infringe at least claim 1 of the '320 Patent. Defendants have provided equipment that induces customers or others to use, offer for sale, and sell the Accused Products in a manner that infringes at least claim 1 of the '320 Patent. They have done so, for example, on their websites, in their user manuals, in their product documentation, and in other advertising materials.[11]

35. The foregoing description of Defendants' infringement is based on publicly available information. Maybell Quantum reserves the right to modify this description, for example, based on information about the Accused Products that it obtains during discovery.

36. Maybell Quantum has been and is being irreparably harmed, and has incurred and will continue to incur damages, because of Defendants' infringement of the '320 Patent.

37. Defendants' infringement of the '320 Patent has damaged and continues to damage Maybell Quantum in an amount yet to be determined.

---

[11] *See, e.g.*, https://nanoscience.oxinst.com/resources/blog/connected-dilution-refrigerators-for-scalable-quantum-computing.

**Contributory Infringement**

38. Since at least as early as the service of this Complaint, Oxford Instruments has contributorily infringed at least claim 1 of the '320 Patent by importing, selling and/or offering to sell their Accused Products within the United States.

39. The Accused Products are not staple articles or commodities of commerce with substantial noninfringing uses. The Accused Products are designed, configured, and adapted to work with both other Oxford Instruments devices and other third-party devices, such as computer systems for control and operation of its dilution refrigerator. The Accused Products have no substantial purpose other than as part of infringing devices and accordingly are not staple articles or commodities of commerce.

40. The Accused Products are a material part of the invention of at least claim 1 of the '320 Patent.

41. Since at least as early as the service of this Complaint, Defendants have known of the '320 Patent and have known that the Accused Products are made or adapted for use in a manner that infringes at least claim 1 of the '320 Patent.

42. The foregoing description of Defendants' infringement is based on publicly available information. Maybell Quantum reserves the right to modify this description, for example, based on information about the Accused Products that it obtains during discovery.

43. Maybell Quantum has been and is being irreparably harmed, and has incurred and will continue to incur damages, because of Defendants' infringement of the '320 Patent.

44. Defendants' infringement of the '320 Patent has damaged and continues to damage Maybell Quantum in an amount yet to be determined.

## **REQUEST FOR RELIEF**

Plaintiff respectfully requests that this Court enter judgment as follows:

    a. Declaring that Defendants have infringed the '320 Patent;

    b. Granting a permanent injunction, enjoining Defendants and their officers, agents, employees, attorneys, and all other persons acting in concert or participation with them, from further infringement of the '320 Patent, including but not limited to enjoining the manufacture, sale, offer for sale, importation, or use of the Accused Products and any further development of the Accused Products;

    c. Awarding Plaintiff damages adequate to compensate it for Defendants' infringing activities, including supplemental damages for any post-verdict infringement up until entry of the final judgment with an accounting as needed, together with pre-judgment and post-judgment interest on the damages awarded;

    d. Declaring that Defendants' infringement has been willful;

    e. Awarding enhanced damages in an amount up to treble the amount of compensatory damages as allowed under 35 U.S.C. § 284;

    f. Finding this to be an exceptional case and awarding Plaintiff its attorneys' fees and costs under 35 U.S.C. § 285 as a result of Defendants' infringement of the Asserted Patent; and

    g. Awarding Plaintiff any such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Maybell Quantum demands a trial by jury on all issues so triable.

|  |  |
|---|---|
| OF COUNSEL:<br>Michael A. Albert<br>WOLF, GREENFIELD & SACKS, P.C.<br>600 Atlantic Avenue, 23rd Floor<br>Boston, MA 02210<br>(617) 646-8000<br><br>Dated: July 29, 2025 | /s/ Karen E. Keller<br>Karen E. Keller (No. 4489)<br>Andrew E. Russell (No. 5382)<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>(302) 298-0700<br>kkeller@shawkeller.com<br>arussell@shawkeller.com<br>*Attorneys for Plaintiff* |