IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MAYBELL QUANTUM INDUSTRIES, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 25-949-MN |
| QD OXFORD UK LIMITED and QUANTUM DESIGN INTERNATIONAL INC., | ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Maybell Quantum Industries, Inc. ("Maybell Quantum" or "Plaintiff") brings

this civil action against Defendants QD Oxford UK Limited ("QDOUK") and Quantum

Design International Inc. ("QDI") (collectively, "Quantum Design" or "Defendants").

### INTRODUCTION

1. On July 29, 2025, Maybell Quantum filed a Complaint alleging that Oxford

Instruments PLC and Oxford Instruments Nanotechnology Tools Ltd. (collectively, "Oxford

Instruments") infringe one or more claims of U.S. Patent No. 12,313,320 (the "'320 Patent" or

the "Asserted Patent") at least by making, importing, using, selling, and/or offering for sale in the

United States devices that infringe one or more claims of the '320 Patent.

2. On January 2, 2026, Quantum Design completed its acquisition of the Oxford

Nanoscience business. (D.I. 15 at 1). As a result of the acquisition, QDI acquired "all liabilities

that relate to [Maybell Quantum's] allegations and claims against [Oxford Instruments] in the

Complaint." (D.I. 15 at 1).

3.    On January 27, 2026, the Court ordered that QDOUK and QDI be substituted as Defendants in this action. (*Id*. at 1–4). Defendants have stipulated that they "are able to and will satisfy any judgment in this action for infringement of the asserted patents." (*Id*. at 2).

## NATURE OF SUIT

4.    This is a civil action for patent infringement under the laws of the United States, 35 U.S.C. § 1, *et seq*.

5.    Oxford Instruments and Defendants have infringed and continue to infringe one or more claims of U.S. Patent No. 12,313,320 (the "'320 Patent" or the "Asserted Patent") at least by making, importing, using, selling, and/or offering for sale in the United States devices that infringe one or more claims of the '320 Patent.

6.    Maybell Quantum is the legal owner by assignment of the entire right, title, and interest in and to the Asserted Patent, which was duly and legally issued by the United States Patent and Trademark Office ("USPTO"). Maybell Quantum seeks injunctive relief and monetary damages to address past and ongoing infringement of its valuable intellectual property.

## THE PARTIES

7.    Maybell Quantum is a corporation organized under the laws of the State of Delaware, with a place of business at 7100 Broadway, Building 3, Suite D-E, Denver, CO 80221. Maybell Quantum is a US leader in quantum cryogenics, pioneering advancements in stable, reliable, and scalable infrastructure and offering unmatched performance for sub-Kelvin dilution refrigeration and integrated wiring solutions.

8.    On information and belief, Quantum Design International Inc. is a California corporation with a place of business at 10307 Pacific Center Court, San Diego, CA 92121.

9.      On information and belief, QD Oxford UK Limited is a corporation registered in England with a place of business at Tubney Woods, Abingdon, Oxfordshire, OX13 5QX, United Kingdom.

### JURISDICTION AND VENUE

10.      This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

11.      This Court may exercise jurisdiction over Defendants pursuant to Rule 4(k)(2) of Federal Rules of Civil Procedure. Maybell Quantum's patent infringement claims arise under federal law, and Oxford Instruments and Defendants have sufficient contacts with the United States as a whole, including by making, using, offering to sell, selling, and importing products that infringe the '320 Patent with the intent and effect that such products will be available for sale throughout the United States, such that this Court's exercise of jurisdiction satisfies due process.[1]

12.      Defendants have also stipulated that they will not challenge venue in the District of Delaware for the purpose of this litigation. (D.I. 15 at 2). Thus, venue is proper in this District under 28 U.S.C. § 1391(c). Further, at least one of the Defendants is not a resident of the United States and accordingly may be sued in any judicial district.

### BACKGROUND

13.      Dilution refrigerators are cryogenic devices that rely on the heat of mixing of helium isotopes to provide cooling down to temperatures near absolute zero (between approximately 1.0 and 0.001 Kelvin). Dilution refrigerators are used in a variety of applications

---

[1] See, e.g., https://thequantuminsider.com/2025/04/23/oxford-instruments-nanoscience-installs-two-of-its-largest-modular-dilution-refrigerators/, demonstrating the ProteoxQX at the March 2025 Global Physics Summit in Anaheim, California.

requiring these extremely low temperatures. For example, dilution refrigerators can be used to support quantum computing (*e.g.*, superconducting quantum computing technologies and qubits) and low-temperature condensed matter physics research, among other applications.

14.    Classic dilution refrigerators, or "wet" dilution refrigerators, precool the helium mixture using liquid nitrogen before further cooling of the mixture below 4 Kelvin. More recently, "dry" or "cryogen-free" dilution refrigerators precool the helium mixture using devices such as a cryocooler rather than cryogenic liquid baths.

15.    Conventional dilution refrigerators also typically occupy a large footprint, which may be prohibitive for applications requiring multiple dilution refrigerators. For example, a single conventional dry dilution refrigerator typically requires approximately 300 square feet and ceiling heights between 12 and 14 feet. This space is occupied not only by the dilution refrigerator itself but is also required to support any auxiliary systems such as pumps, compressors, water cooling systems and/or cryocooler systems.

16.    The inventors at Maybell Quantum recognized that the quantum technology industry needed a new reliable, easy-to-use, easy-to-maintain, and compact dilution refrigerator. They also realized that, for quantum computing and other quantum technologies to be easily scalable, a complete shift in design was required. The inventors developed dilution refrigerators and distributed cooling systems that can be integrated with commercially available server rack infrastructure (*e.g.*, 19-inch server racks) and easily maintained.

17.    Maybell Quantum is the current owner by assignment of the entire right, title, and interest in and to the '320 Patent titled, "Integrated Dilution Refrigerators." The '320 Patent issued on May 27, 2025. The '320 Patent is directed to a dilution refrigerator comprising: an outer vacuum chamber including at least one substantially planar surface and an opening in the at

least one substantially planar surface configured to provide access to an interior of the outer vacuum chamber. A copy of the '320 Patent is attached as Exhibit A. Such an opening is configured to provide access to experimental volume disposed within an interior of the outer vacuum chamber and may be hermetically sealed with a hinged door. Such features addressed deficiencies of prior dilution refrigerators and allowed much needed scalability.

18.    Maybell Quantum has complied with its obligations under 35 U.S.C. § 287 for the Asserted Patent.

19.    The allegations provided below are exemplary and without prejudice to Maybell Quantum's infringement contentions. In providing these allegations, Maybell Quantum does not convey or imply any particular claim constructions or the precise scope of the claims. Maybell Quantum's claim construction contentions regarding the meaning and scope of the claim terms will be provided under the Court's scheduling order and local rules.

20.    Details of the Accused Products are provided through a publicly available augmented reality application. Oxford Instruments advertised its ProteoxQX systems ("Accused Products") at least through the online Google Play and Apple Play stores.[2] This augmented reality app purports to be an accurate depiction of the Accused Products and allowed one to view Oxford Instruments's cryogenic systems in life size, providing "the opportunity to place them in your lab space and see how they fit, get up close to different components within the system and envisage how you will fit your experiments on the different temperature stages."[3] Regarding the Accused Products in particular and through this augmented reality app, "you can see the fully accessible sample space that only this shape of large dilution refrigerator will give you, with

---

[2] See, e.g., https://apps.apple.com/us/app/explore-proteox/id6477702161; https://play.google.com/store/apps/details?id=com.YourCompany.ExploreProteox&hl=en_US.

[3] https://apps.apple.com/us/app/explore-proteox/id6477702161.

doors and easily removable radiation shields allowing you full access to the mixing chamber sample space."[4]

21.    Additionally, Oxford Instruments and Defendants have also associated the design of the Accused Products with the disclosures of U.S. Patent No. 12,320,557 ("the '557 Patent"), and in particular with Figure 12.[5] Thus, on information and belief, the '557 Patent also describes features of the Accused Products.

22.    On information and belief, the infringing products include without limitation: a dilution refrigerator comprising: an outer vacuum chamber including at least one substantially planar surface and an opening in the at least one substantially planar surface configured to provide access to an interior of the outer vacuum chamber.

23.    On information and belief, the Accused Products further comprise a sample stage housed within the experimental volume, wherein the opening is configured to provide access to the sample stage through the outer vacuum chamber.

24.    On information and belief, the Accused Products further comprise at least one substantially planar surface, including first surfaces disposed within a plane perpendicular to a plane of a floor supporting the dilution refrigerator; and second surfaces disposed within a plane parallel to the plane of the floor, wherein the first surfaces and the second surfaces are arranged as a rectangular prism.

25.    On information and belief, the opening of the Accused Products further comprises a hermetic opening.

---

[4] *Id.*

[5] See https://nanoscience.oxinst.com/resources/blog/connected-dilution-refrigerators-forscalable-quantum-computing; https://qd-oxford.com/blog/2025_06_13_blog_item.html.

26.    On information and belief, the Accused Products constitute dilution refrigerators comprising: an outer vacuum chamber comprising an outer housing having at least one substantially planar surface; and an opening in the at least one substantially planar surface of the outer housing configured to provide access to an experimental volume disposed within an interior of the outer vacuum chamber, wherein the at least one substantially planar surface of the outer housing comprises a first surface disposed within a plane perpendicular to a plane of a floor supporting the dilution refrigerator.

27.    On information and belief, the Accused Products constitute dilution refrigerators comprising: an outer vacuum chamber comprising an outer housing having at least one substantially planar surface; and an opening in the at least one substantially planar surface configured to provide access to an interior of the outer vacuum chamber, wherein the opening comprises a hinged door.

28.    Oxford Instruments and Defendants have benefited from these infringed patented features. For example, Oxford Instruments touted a "defining feature" of the Accused Products as being "modular."[6] According to an Oxford Instruments website, the Accused Products were "born out of many conversations about scalability and flexibility."[7] It asserted that its modular design is "unique" and that the Accused Products have a removable side-loading insert that offers time-savings and maximum uptime, "allowing for scalability" from prototyping to full-scale implementation.[8] According to Oxford Instruments, this "scalability is one of the key

---

[6] See https://nanoscience.oxinst.com/resources/blog/introducing-proteoxQX-our-largestmodular-dilution-refrigerator-system; see also https://qd-oxford.com/blog/2025_06_13_blog_item.html.

[7] *Id.*

[8] See https://www.oxinst.com/news/oxford-instruments-nanoscience-installs-two-of-its-largestmodular-dilution-refrigerators/; see also https://qd-oxford.com/blog/2025_06_13_bloog_item.html.

features of its design, with a fully accessible workspace measuring over 3 m tall and over 1.5 m wide."[9] However, these advantages are not unique; they are described by and resulting from the novel designs of Maybell Quantum's '320 Patent.

29.    The Accused Products are non-limiting examples that were identified based on publicly available information, and Maybell Quantum reserves the right to identify additional infringing activities and products, including, for example, on the basis of information obtained during discovery.

30.    As detailed below and in Exhibit B, each limitation of at least one claim of the Asserted Patent is literally present in the Accused Products, or is literally practiced by Defendants' personnel, agents, or customers who use the Accused Products. To the extent that any limitation is not literally present or practiced, each such limitation is present or practiced under the doctrine of equivalents.

31.    As set forth above, Defendants have made use of Maybell Quantum's patented technologies, including the technology described and claimed in the '320 Patent.

**COUNT I**
**(Infringement of U.S. Patent No. US 12,313,320)**

32.    Maybell Quantum incorporates by reference and realleges all the foregoing paragraphs of this First Amended Complaint as if fully set forth herein.

**Direct Infringement**

33.    Defendants and Oxford Instruments have directly infringed, literally and/or equivalently, one or more claims of the '320 Patent, including at least claims 1, 17 and 18, including by making, importing, using, selling, and offering for sale in the United States the

---

[9] *Id.*

Accused Products. Defendants acquired all assets and liabilities (including historic liabilities) relating to the Oxford Nanoscience business, including all liabilities that relate to Maybell Quantum's allegations and claims in the original Complaint. (D.I. 15 at 1).[10]

34.    For example, and without limitation, Defendants' Accused Products meet each and every limitation of claims 1, 17 and 18 either literally or under the doctrine of equivalents, as set forth in Exhibit B and incorporated here.[11]

35.    On information and belief, Oxford Instruments or Defendants have imported into the United States and sold in the United States at least one of the Accused Products.

**Knowledge of the '320 Patent**

36.    Since at least as early as September 19, 2025, when it received the waiver of service form for the original Complaint, Oxford Instruments knew of the '320 Patent.

37.    Since at least as early as January 23, 2026, when Defendants represented that QDI acquired all liabilities that relate to Maybell Quantum's allegations and claims against Oxford Instruments in the original Complaint (D.I. 12), Defendants knew of the '320 Patent.

**Willful Infringement**

38.    Despite its knowledge of this pending litigation when it acquired Oxford Instruments Nanotechnology Tools Ltd., Defendants' website continues to advertise the ProteoxQX among its Proteox family of products.[12]

---

[10] See also https://qdusa.com/siteDocs/news/2026_01_02_QD_Completes_Acquisition_of_Oxford_NanoScience.pdf

[11] See, e.g., https://thequantuminsider.com/2025/04/23/oxford-instruments-nanoscience-installs-two-of-its-largest-modular-dilution-refrigerators.

[12] See https://www.qd-oxford.com/



Screenshot from https://www.qd-oxford.com/.

39.     Defendants' blog posts and other marketing materials have continued to market the Accused Products after the filing of the original Complaint.[13] For example, when announcing the installation of the first two ProteoxQX systems, Defendants' website states that "[p]utting these large-scale systems into customer hands was an exciting milestone, **but only the beginning**."[14] On February 5, 2026, Defendants touted the Proteox family of products, including the ProteoxQX platform, in a blog post.[15]

40.     The infringement allegations in the original Complaint put Defendants on notice that making, importing, selling, offering for sale, and using the Accused Products within the United States, and inducing others to do the same, constitutes infringement of the '320 Patent. (D.I. 1). Despite receiving notice of Maybell Quantum's allegations from the original Complaint,

---

[13] See, e.g., https://qd-oxford.com/blog/2025_06_09_blog_item.html; https://www.linkedin.com/posts/celine-bansal-644aa913_introducing-proteoxqx-our-largest-modular-activity-7051957484495753216-II92.

[14] https://qd-oxford.com/blog/2025_06_09_blog_item.html.

[15] https://qd-oxford.com/blog/2026_02_05_blog_item.html.

Defendants have continued touting the Accused Products on their website. Defendants' ongoing activities encourage customers to use the Accused Products in a manner that Defendants knew would infringe the '320 Patent, which demonstrates the willful nature of Defendants' infringement. (*Id.*).

### Induced Infringement

41.    Since at least as early as September 19, 2025, when it received the waiver of service form for the original Complaint, Oxford Instruments has known that the Accused Products infringe at least claims 1, 17 and 18 of the '320 Patent when used by customers or other users, when imported by others, and when sold or offered for sale by its subsidiaries or other third parties in the United States.

42.    Since at least as early as January 23, 2026, when Defendants represented that QDI acquired all liabilities that relate to Maybell Quantum's allegations and claims against Oxford Instruments in the original Complaint (D.I. 12), Defendants have known that the Accused Products infringe at least claims 1, 17 and 18 of the '320 Patent when used by customers or other users, when imported by others, and when sold or offered for sale by its subsidiaries or other third parties in the United States.

43.    Since at least as early as January 23, 2026, Defendants have induced infringement and continue to induce infringement of at least claims 1, 17, and 18 of the '320 Patent by actively encouraging customers or other users to directly infringe at least claims 1, 17 and 18 of the '320 Patent in the United States. Defendants have provided marketing materials, blog posts, and other materials such as their website, https://qd-oxford.com, that induce customers or others within the United States to use the Accused Products in a manner that is known by Defendants to infringe at least claims 1, 17 and 18 of the '320 Patent. For example, a blog post touts a fully accessible workspace as a key feature of the ProteoxQX design, making ProteoxQX "easier to service - an

important uptime consideration."[16] "For example, a user may only need to remove part of thermal shielding for a given module to access the relevant space."[17] The website notes that "the systems can be configured by the customer either to connect cold plates to give a large continuous mixing chamber, or to maintain separately controlled mixing chamber spaces. This flexibility of configuration allows the ProteoxQX to grow and adapt as users' QPUs expand, protecting the investment and following the customer's technology journey."[18] These blog posts have remained accessible within the United States after Defendants became aware of the '320 Patent and aware that the Accused Products infringe at least claims 1, 17 and 18 of the '320 Patent.

44.     The foregoing description of Defendants' infringement is based on publicly available information. Maybell Quantum reserves the right to modify this description, for example, based on information about the Accused Products that it obtains during discovery.

45.     Maybell Quantum has been and is being irreparably harmed, and has incurred and will continue to incur damages, because of Defendants' infringement of the '320 Patent.

46.     Defendants' infringement of the '320 Patent has damaged and continues to damage Maybell Quantum in an amount yet to be determined.

### Contributory Infringement

47.     Since at least as early as the service of this Complaint, Oxford Instruments has contributorily infringed at least claims 1, 17 and 18 of the '320 Patent by importing, selling, and offering to sell the Accused Products within the United States.

---

[16] https://qd-oxford.com/blog/2025_06_09_blog_item.html.

[17] *Id*.

[18] *Id*.

48.     The Accused Products are not staple articles or commodities of commerce with substantial noninfringing uses. The Accused Products are designed, configured, and adapted to work with other refrigerators and with other third-party devices, such as quantum computer systems cooled by one or more dilution refrigerators. As noted above, the accused dilution refrigerators are designed for a customer's quantum computing system either as "a large continuous mixing chamber, or [a] separately controlled mixing chamber spaces."[19] In either configuration, the Accused Products have no substantial purpose other than as part of infringing devices and accordingly are not staple articles or commodities of commerce.

49.     The Accused Products are a material part of the invention of at least claims 1, 17 and 18 of the '320 Patent.

50.     Since at least as early as the service of this Complaint, Defendants have known of the '320 Patent and have known that the Accused Products are made or adapted for use in a manner that infringes at least claims 1, 17 and 18 of the '320 Patent.

51.     The foregoing description of Defendants' infringement is based on publicly available information. Maybell Quantum reserves the right to modify this description, for example, based on information about the Accused Products that it obtains during discovery.

52.     Maybell Quantum has been and is being irreparably harmed, and has incurred and will continue to incur damages, because of Defendants' infringement of the '320 Patent.

53.     Defendants' infringement of the '320 Patent has damaged and continues to damage Maybell Quantum in an amount yet to be determined.

## REQUEST FOR RELIEF

Plaintiff respectfully requests that this Court enter judgment as follows:

---

[19] *Id.*

a)      Declaring that Defendants have infringed the '320 Patent;

b)      Granting a permanent injunction, enjoining Defendants and their officers, agents, employees, attorneys, and all other persons acting in concert or participation with them, from further infringement of the '320 Patent, including but not limited to enjoining the manufacture, sale, offer for sale, importation, or use of the Accused Products and any further development of the Accused Products;

c)      Awarding Plaintiff damages adequate to compensate it for Defendants' infringing activities, including supplemental damages for any post-verdict infringement up until entry of the final judgment with an accounting as needed, together with pre-judgment and post-judgment interest on the damages awarded;

d)      Declaring that Defendants' infringement has been willful;

e)      Awarding enhanced damages in an amount up to treble the amount of compensatory damages as allowed under 35 U.S.C. § 284;

f)      Finding this to be an exceptional case and awarding Plaintiff its attorneys' fees and costs under 35 U.S.C. § 285 as a result of Defendants' infringement of the Asserted Patent; and

g)      Awarding Plaintiff any such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Maybell Quantum demands a trial by jury on all issues so triable.

14

/s/ Andrew E. Russell
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Virginia K. Lynch (No.7423)
SHAW KELLER LLP
OF COUNSEL:                                    I.M. Pei Building
Michael A. Albert                              1105 North Market Street, 12th Floor
WOLF, GREENFIELD & SACKS, P.C.                 Wilmington, DE 19801
600 Atlantic Avenue, 23rd Floor                (302) 298-0700
Boston, MA 02210                               kkeller@shawkeller.com
(617) 646-8000                                 arussell@shawkeller.com
                                               glynch@shawkeller.com
                                               *Attorneys for Plaintiff*
Mark J. Consilvio
WOLF, GREENFIELD & SACKS, P.C.
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 571-5001

Dated: February 6, 2026