IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MAYBELL QUANTUM INDUSTRIES, INC., | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 25-949-MN |
| | ) | |
| QD OXFORD UK LIMITED and QUANTUM DESIGN INTERNATIONAL INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MAYBELL'S OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS**

OF COUNSEL:
Michael A. Albert
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue, 23rd Floor
Boston, MA 02210
(617) 646-8000

Mark J. Consilvio
WOLF, GREENFIELD & SACKS, P.C.
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 571-5001

Dated: March 6, 2026

Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Virginia K. Lynch (No.7423)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawkeller.com
glynch@shawkeller.com
*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................................ 1

II.   NATURE AND STAGE OF THE PROCEEDINGS ............................................................. 3

III.  SUMMARY OF THE ARGUMENTS .................................................................................. 3

IV.   STATEMENT OF THE FACTS ......................................................................................... 4

V.    LEGAL STANDARD......................................................................................................... 5

VI.   ARGUMENT ................................................................................................................... 6

    A.    The FAC Sufficiently Pleads Each Element of Contributory Infringement. ................ 6

        1.    The ProteoxQX is a Component of a Patented Combination. .............................7

        2.    The ProteoxQX Has No Substantial Noninfringing Use. ...................................10

    B.    The Law Does Not Prohibit the Same Product From Simultaneously Directly
        Infringing and Serving as a Contributory Infringement Component.......................... 14

    C.    If the Court Finds Any Deficiency, Leave to Amend Should Be Granted. ................ 15

VII.  CONCLUSION................................................................................................................ 16

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*AgroFresh Inc. v. Essentiv LLC*,
 No. CV 16-662-MN-SRF, 2018 WL 6974947 (D. Del. Dec. 27, 2018) .................................13

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009).................................................................................................................3, 6

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)............................................................................................................3, 5, 6

*Bench Walk Lighting LLC v. LG Innotek Co.*,
 530 F. Supp. 3d 468 (D. Del. 2021)..............................................................................9, 10, 16

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
 681 F.3d 1323 (Fed. Cir. 2012)......................................................................................6, 8, 13

*Boyd v. New Jersey Dep't of Corr.*,
 583 F. App'x 30 (3d Cir. 2014) .........................................................................................15

*Conair Corp. v. Jarden Corp.*,
 2014 WL 3955172 (S.D.N.Y. 2014).......................................................................2, 11, 14, 15

*Foman v. Davis*,
 371 U.S. 178 (1962)..............................................................................................................16

*H. Lundbeck A/S v. Lupin Ltd.*,
 84 F.4th 1368 (Fed. Cir. 2023) ............................................................................................11

*HSM Portfolio LLC v. Fujitsu Ltd.*,
 2014 WL 4468088 (D. Del. Sept. 9, 2014).....................................................................6, 10, 16

*PPG Indus. Ohio, Inc. v. Axalta Coating Sys., LLC*,
 No. CV 21-346-LPS-SRF, 2022 WL 610740 (D. Del. Jan. 26, 2022) ...................................13

*Ricoh Co. v. Quanta Computer Inc.*,
 550 F.3d 1325 (Fed. Cir. 2008).................................................................................. *passim*

*Tonal Sys., Inc. v. ICON Health & Fitness, Inc.*,
 2021 WL 1785072 (D. Del. May 5, 2021)..............................................................................9

**Statutes**

35 U.S.C. § 271(a) ..................................................................................................................12

35 U.S.C. § 271(c) .......................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 8(a) .....................................................................................................................5

Fed. R. Civ. P. 12(b)(6).....................................................................................................3, 5, 13

## I.    INTRODUCTION

Defendants QD Oxford UK Limited and Quantum Design International Inc.'s (collectively, "Quantum" or "Defendants") Partial Motion to Dismiss ("Motion") should be denied.  Defendants argue that Plaintiff Maybell Quantum Industries, Inc.'s ("Maybell") First Amended Complaint ("FAC") fails to state a claim for contributory infringement of U.S. Patent No. 12,313,320 ("the '320 Patent") because it relies on the same accused product, the ProteoxQX dilution refrigerator, for both its direct and contributory infringement claims.  According to Defendants, the ProteoxQX cannot simultaneously be the directly infringing product and a "component" of patented combination under 35 U.S.C. § 271(c).

Defendants' argument is incorrect as a matter of law.  The FAC's allegations are sufficient to state a claim for both direct and contributory infringement because two different sets of circumstances give rise to the two different causes of action.  The accused products are configurable as stand-alone dilution refrigerators (which directly infringe), while in other circumstances they are sold as components to be combined into a larger-capacity refrigerator. When a unit is adapted such that the product is one component of a larger capacity refrigerator, Defendants are liable for contributory infringement.

Defendants' own marketing tells the story.  Defendants market the ProteoxQX not just as standalone devices but for integration into a multi-unit configuration for large quantum computing systems—assembling open cavities face-to-face forming a larger refrigerated space. Indeed, Defendants' marketing describes the ProteoxQX's "modular architecture" as a "defining feature," designed for "scalability" from prototyping to full-scale implementation.  FAC ¶ 28. Their website confirms that "the systems can be configured by the customer either to connect cold plates to give a large continuous mixing chamber, or to maintain separately controlled mixing chamber spaces," allowing the ProteoxQX to "grow and adapt as users' QPUs expand."

1

FAC ¶ 43.  Customers who assemble those multi-unit systems directly infringe the '320 patent.  As a consequence, Defendants, by selling those ProteoxQX units as components of a larger infringing refrigerator system, are contributorily liable.  As their own materials show, Defendants designed and advertised their product for the express purpose of contributing to the larger infringing devices as well as for sales of individual directly-infringing units.  They thus have liability under each cause of action.

Nothing in § 271(c), and no cases cited by Defendants, precludes a product from direct and contributory infringement, particularly here where in one configuration the product may serve as a standalone unit and, in an alternative configuration, as a component in an infringing combination through customers' downstream use.  The Federal Circuit has expressly held that § 271(c) "applies not only to the bare sale of an infringing component, but also to the sale of that component as part of a product or device," and that a defendant "should not be permitted to escape liability as a contributory infringer merely by embedding [a component] in a larger product."  *Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1337–38 (Fed. Cir. 2008).  Courts applying *Ricoh* have held that a contributory infringement claim does not fail merely because it is "essentially a repetition of" a direct infringement claim, provided it is otherwise adequately pled.  *Conair Corp. v. Jarden Corp.*, 2014 WL 3955172, at *5 (S.D.N.Y. 2014).

The cases Defendants cite do not support a different result.  Each of those cases dismissed contributory infringement claims because the plaintiff either tried to characterize the same product simultaneously as the complete patented invention and as a mere component of itself, creating an internal contradiction, or failed to plead any facts beyond bare statutory recitations.  Maybell has done neither.  The FAC makes specific factual allegations about the ProteoxQX's specialized design for quantum computing environments, its adaptation for multi-

unit integration, and the absence of any substantial non-infringing use.  A defendant whose own marketing materials describe its product's multi-unit combination purpose cannot credibly contend that the FAC's contributory infringement allegations are implausible.

At the pleading stage, Maybell need only allege a plausible claim—not prove it.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The FAC satisfies that standard.  Defendants' motion should be denied.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

On July 29, 2025, Maybell filed its original Complaint alleging infringement of the '320 Patent.  (D.I. 1.)  On January 23, 2026, the parties filed a joint stipulation substituting QD Oxford UK Limited and Quantum Design International Inc. as defendants in place of Oxford Instruments PLC and Oxford Instruments Nanotechnology Tools Ltd., following Quantum Design's acquisition of the Oxford Nanoscience business.  (D.I. 12.)  Defendants represented that they acquired all liabilities relating to Maybell's allegations and claims against Oxford Instruments.  (D.I. 12 at 1.)  Also on January 23, 2026, Defendants moved to partially dismiss the original Complaint under Rule 12(b)(6) for failure to state a claim for willful infringement, induced infringement, and contributory infringement.  (D.I. 14.)  Maybell filed the FAC on February 6, 2026.  (D.I. 18.)  On February 20, 2026, Defendants moved to partially dismiss the FAC for failure to state a claim as to contributory infringement.  (D.I. 20.)  No scheduling order has been entered, and discovery has not commenced.

## III.    SUMMARY OF THE ARGUMENTS

Defendants' motion to dismiss Maybell's contributory infringement claim should be denied for two independent reasons.

First, the FAC's allegations are factually sufficient to state a plausible claim for contributory infringement under *Twombly* and *Iqbal*.  The FAC pleads specific facts,

3

corroborated by Defendants' own marketing materials, establishing each required element of § 271(c): that the ProteoxQX is a component of a patented combination, that it has no substantial non-infringing use, and that Defendants sold it knowing of its especially adapted use in infringing refrigeration systems.

Second, the law does not prohibit the same device from both directly infringing (as a standalone product) and serving as a contributory infringement component of a multi-unit system. The Federal Circuit's decision in *Ricoh* and the cases applying it foreclose Defendants' categorical argument to the contrary. Each case Defendants cite turned on bare, conclusory pleadings or an internal contradiction in the plaintiff's own theory, neither of which is present here.

## IV.    STATEMENT OF THE FACTS

Maybell Quantum is the owner of the '320 Patent, directed to an integrated dilution refrigerator comprising an outer vacuum chamber with at least one substantially planar surface and an opening configured to provide access to an interior of the outer vacuum chamber. FAC ¶ 17. The '320 Patent issued on May 27, 2025. *Id.*

Defendants market and sell the ProteoxQX dilution refrigerator systems (the "Accused Products"). FAC ¶ 20. The Accused Products are designed for quantum computing environments and can be sold and used as individual dilution refrigerator units or configured or adapted for use in multi-unit dilution refrigerator systems. FAC ¶¶ 48. Defendants' own marketing materials describe the ProteoxQX's "modular architecture" as a "defining feature," noting that the product was "born out of many conversations about scalability and flexibility" and that its design allows for "scalability" from prototyping to full-scale implementation. FAC ¶ 28. Defendants' own website further states that "the systems can be configured by the customer either to connect cold plates to give a large continuous mixing chamber, or to maintain separately

4

controlled mixing chamber spaces," and that "[t]his flexibility of configuration allows the ProteoxQX to grow and adapt as users' QPUs expand."  FAC ¶ 43.

The FAC alleges that the Accused Products directly infringe at least claims 1, 17, and 18 of the '320 patent as standalone dilution refrigerators.  FAC ¶¶ 33–35.  The FAC further alleges that Defendants contributorily infringe those same claims by selling the ProteoxQX knowing that customers integrate multiple units into larger quantum computing systems that practice the claims of the '320 patent.  FAC ¶¶ 47–53.  Defendants knew of the '320 Patent at least since July 29, 2025, when Maybell sent Defendants a letter enclosing the as-filed original Complaint, which identified the '320 Patent and accused the ProteoxQX of infringement.  Defendants were formally served the original Complaint on September 19, 2026, when they received the request for waiver of service.  FAC ¶ 36.  Despite this knowledge, Defendants have continued to market and sell the Accused Products.  FAC ¶¶ 38–40.

Maybell filed its original Complaint on July 29, 2025.  When Defendants moved to dismiss the original complaint's indirect infringement allegations, Maybell filed the FAC adding specific factual allegations regarding the integration of the ProteoxQX into larger quantum computing systems, including Defendants' own product documentation and marketing materials describing the multi-unit modular configuration.  Defendants now move to dismiss only the contributory infringement claim.

## V.    LEGAL STANDARD

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint's factual allegations must be taken as true.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  *Id.* at 555.  The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements.  *Id.*  ("Factual

allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).”). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

“Determining whether a complaint states a plausible claim for relief is a very ‘context-specific task.’” *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) (citing *Iqbal*, 556 U.S. at 679). To state a claim for contributory infringement under 35 U.S.C. § 271(c), a plaintiff must plead facts plausibly demonstrating that the defendant: “(1) had knowledge of the patent; (2) sold products especially made for [the combination product’s] the infringing use; (3) had knowledge of the infringing use; (4) sold products with no substantial noninfringing use; and (5) [the combination product] directly infringed.” *HSM Portfolio LLC v. Fujitsu Ltd.*, 2014 WL 4468088, at *1 (D. Del. Sept. 9, 2014); *In re Bill of Lading*, 681 F.3d at 1337. In the context of § 271(c), “a substantial non-infringing use is any use that is ‘not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.’” *In re Bill of Lading*, 681 F.3d at 1337 (citing *Vita-Mix Corp. v. Basic Holdings, Inc.*, 581 F.3d 1317, 1327–29 (Fed. Cir. 2009)).

## VI.    ARGUMENT

### A.    The FAC Sufficiently Pleads Each Element of Contributory Infringement.

The motion to dismiss Maybell’s contributory infringement claim should be denied because the FAC’s allegations, taken as true and with all reasonable inferences drawn in Maybell’s favor, plausibly establish each required element of contributory infringement. Far from offering bare statutory recitations, the FAC provides specific factual allegations corroborated by Defendants’ own publicly available marketing materials and technical documentation. That is precisely what *Twombly* and *Iqbal* require.

6

### 1.    The ProteoxQX is a Component of a Patented Combination.

The FAC's allegations plausibly establish that the ProteoxQX is a component of a patented combination within the meaning of § 271(c).

The FAC alleges that the ProteoxQX dilution refrigerators are "designed, configured, and adapted to work with other refrigerators and with other third-party devices, such as quantum computer systems cooled by one or more dilution refrigerators." FAC ¶ 48.  This allegation is supported by Defendants' marketing materials, announcing their

> approach to large modular dilution refrigerators for quantum computing, [including] the **inter-connection of multiple rectangular-format dilution refrigerator systems**, with connection not only of vacuum vessels **to form a single multi-system contiguous vacuum space**, but also of the multiple cold plates of the dilution refrigerator … [and] allowing quantum processing unit (QPU) interconnection without having to route wiring outside of the cryostat to ambient, room temperature connections between systems.

*See* FAC ¶ 28 (citing Exhibit A) (emphasis added).  As their marketing literature states, Defendants "took this multi-system scalability into account from the start when developing [their] ProteoxQX large-format, 1,000-plus qubit capable system, and designed for both efficient footprint and inter-connection." *Id*. Defendants' website further states that "the systems can be configured by the customer either to connect cold plates to give a large continuous mixing chamber, or to maintain separately controlled mixing chamber spaces," and that "[t]his flexibility of configuration allows the ProteoxQX to grow and adapt as users' QPUs expand, protecting the investment and following the customers' technology journey."  FAC ¶ 43. Defendants' own marketing literature thus describes their product's multi-unit combination purpose, belying any argument that the product is not especially adapted for that use.

The multi-unit quantum computing system that results from adapting and integrating multiple ProteoxQX units is a distinct infringing product apart from any individual unit.  When customers assemble that interconnected system, as Defendants' website describes and

7

encourages, the individual ProteoxQX unit is a component of the larger infringing refrigerator combination.  Those customers are the direct infringers of the combination, and Defendants are the contributory infringers.  Maybell does not need to identify a specific direct infringer at the pleading stage.  Instead, it only needs to plead facts "sufficient to allow an inference that at least one direct infringer exists."  *In re Bill of Lading*, 681 F.3d at 1337.  The allegations of the FAC satisfy that standard.

Defendants argue that the quantum computer system cannot be the "patented invention" because the asserted claims are directed to a dilution refrigerator, not a quantum computer system.  Motion at 5.  This argument misconstrues § 271(c).  The statute asks whether the accused component is "a component of a patented machine, manufacture, ***combination*** or composition."  35 U.S.C. § 271(c) (emphasis added).  The relevant question is not whether the combination is separately claimed, but whether the combination practices the patent's claims through the use of the accused component.  Each individual ProteoxQX unit may be adapted and interconnected with other units to form a dilution refrigerator for a quantum computing system that independently practices claims 1, 17, and 18 of the '320 patent.  Each customer who uses a ProteoxQX unit, whether as a standalone device or as a component in a larger system, directly infringes those claims through that use.  The combination context is where that direct infringement occurs, and Defendants are the contributory infringers who enable it by selling the component knowing of that customer use.  This structure falls squarely within § 271(c).

The cases on which Defendants rely to argue that the Accused Product itself cannot be a component are inapposite.  The court in *Tonal Systems* dismissed a contributory infringement counterclaim because the plaintiff pointed to the same claim and tried to characterize the accused product as simultaneously the complete patented machine *and* a mere component of that same

8

machine under the same claim, in the same transaction, with the same actor. *Tonal Sys., Inc. v. ICON Health & Fitness, Inc.*, 2021 WL 1785072 at *5 (D. Del. May 5, 2021), report and recommendation adopted, 2021 WL 5860783 (D. Del. Aug. 12, 2021). The court found that characterization internally contradictory, in that a product cannot be both the whole and a part of the whole at the same time. *Id.* That contradiction is absent here. Maybell's direct infringement theory addresses Defendants' own acts of selling the standalone ProteoxQX, while Maybell's contributory infringement theory addresses a distinct set of acts and distinct conduct—customers who integrate multiple ProteoxQX units into larger dilution refrigerator systems, with Defendants as the contributory infringers. The *Tonal Systems* court did not address, and certainly did not foreclose, the FAC's distinct theories, which involve distinct actors and distinct conduct.

To further illustrate the point, consider that claim 18 of the '320 Patent requires a hinged door. Defendants' website states that multiple ProteoxQX systems can be interconnected to create "a large continuous mixing chamber." FAC ¶ 43. That interconnected configuration may plausibly require removal of the hinged door to allow for a continuous chamber. A unit sold without a door for that purpose might not literally satisfy claim 18 by itself but would contributorily infringe once integrated with another unit forming a dilution refrigerator with a hinged door. Thus, unlike in *Tonal Systems*, the infringing combination is not identical to a single, standalone unit. Nothing in *Tonal Systems* forecloses the application of § 271(c) in such a scenario.

Defendants' reliance on *Bench Walk* is likewise misplaced. The *Bench Walk* court dismissed the contributory infringement claim not because a directly infringing product can never be a component, but because the plaintiff's amended complaint did nothing more than

recite the statutory elements without providing any facts to make those elements plausible. *Bench Walk Lighting LLC v. LG Innotek Co.*, 530 F. Supp. 3d 468, 491 (D. Del. 2021) ("Plaintiff's contributory infringement allegations otherwise simply track the legal elements of such a claim, without providing any facts that flush out why it is plausible that those elements are met."). That is not what the FAC has done here. The FAC provides specific factual allegations, corroborated by Defendants' marketing materials, about how and why the ProteoxQX is especially designed and adapted for integration into multi-unit quantum computing systems. FAC ¶¶ 28, 48.

Defendants' reliance on *HSM Portfolio* is similarly inapt. *HSM Portfolio* turned on a single paragraph in the complaint alleging that every use of the accused semiconductor chips involved infringing features. *HSM Portfolio LLC v. Fujitsu Ltd.*, No. CV 11-770-RGA, 2014 WL 4468088 at *1 (D. Del. Sept. 9, 2014). The court found that allegation legally insufficient because it failed to distinguish the component from the patented combination. *Id.* ("Contributory infringement requires a *component* of a patented invention") (cleaned up). Maybell's FAC does not suffer from that deficiency. It identifies the combination, explains how the ProteoxQX functions as a component of it, and provides factual corroboration from Defendants' own publicly available information. FAC ¶¶ 47–53.

### 2. The ProteoxQX Has No Substantial Noninfringing Use.

Contrary to Defendants' assertion, Maybell's FAC does not simply parrot the statutory no-substantial-noninfringing-use element. It provides specific factual allegations, corroborated by Defendants' own marketing materials, establishing that the ProteoxQX has no substantial use outside of quantum computing applications that practice the '320 patent's claims. FAC ¶¶ 28, 43, 48. The FAC describes a highly specialized dilution refrigerator engineered for extreme cryogenic conditions required by quantum computing, whose design, marketing, and commercial

10

purpose are directed entirely to quantum computing applications.  Defendants' own materials confirm there is no substantial market for the ProteoxQX outside of that context.  Taken together, and with all reasonable inferences drawn in Maybell's favor, these facts make it plausible that no substantial noninfringing use exists.

Defendants argue that the no-substantial-noninfringing-use inquiry asks whether the component "can be used for purposes other than infringement," not whether the component alone can infringe, and that because the ProteoxQX can be used as a standalone product, it has a substantial use outside the infringing combination.  Motion at 4.  Defendants' argument misconstrues both the statute and the relevant caselaw.

The Federal Circuit has held that "substantial noninfringing use in section 271(c) refers to uses that do not infringe the patent in question." *H. Lundbeck A/S v. Lupin Ltd.*, 84 F.4th 1368, 1373 (Fed. Cir. 2023).  The Federal Circuit explained that the statute asks whether the component is "especially made or especially adapted for use in an infringement of [the asserted] patent." *Id.*  A use that infringes the asserted patent is therefore not a *non*infringing use within the meaning of § 271(c).  The standalone use of the ProteoxQX directly infringes claims 1, 17, and 18 of the '320 patent and thus, under *Lundbeck*, cannot be a noninfringing use.  Defendants characterize the ProteoxQX's capacity for standalone use as a "noninfringing" alternative.  But taking the FAC's direct infringement allegations to be true, as is required on a motion to dismiss, that standalone use is an *infringing* one. *See also Conair Corp. v. Jarden Corp.*, 2014 WL 3955172, at *5 (S.D.N.Y. 2014) (finding no authority for the theory that a component's capacity for standalone direct infringing use defeats contributory infringement liability).

The purpose of Section 271(c) further supports this reading.  The no-substantial-noninfringing-use exception was designed to protect sellers of products that genuinely served

11

purposes unrelated to the patent – not to shield infringers whose products infringe, albeit some standing alone and some as combinations. *See Ricoh Co. v. Quanta Computer, Inc.*, 550 F.3d 1325, 1338 (Fed. Cir. 2008). As the *Ricoh* court confirmed, when a product can be used only to infringe, "the inference that infringement is intended is unavoidable." *Id*. The ProteoxQX is such a product. Every use of it, standalone or in interconnected combination, infringes the '320 Patent. Defendants identify no substantial noninfringing use.

The § 271(c) contributory infringement theory here is distinct from, and not merely duplicative of, direct infringement under § 271(a). The § 271(a) claim addresses Defendants' own acts: making, importing, selling, and offering to sell the ProteoxQX. The § 271(c) claim addresses what happens after certain of Defendants' sales: customers who integrate multiple ProteoxQX units into quantum computing systems independently and directly infringe the '320 Patent through that use, and Defendants contribute to that infringement by selling the product knowing customers will use it that way. Those are different actors, different conduct, and different liability, even under the same claims. A product sold by a defendant who knows it will be used by downstream customers in an infringing application, and who markets it specifically for that purpose, is precisely what § 271(c) was designed to reach. The existence of that distinct downstream infringing use, and Defendants' knowing contribution to it, is what gives the contributory infringement claim independent legal significance beyond the direct infringement theory.

12

The *PPG*[1] and *AgroFresh*[2] cases Defendants cite (Motion at 5–6) are inapposite. Unlike those cases, which involved complaints with no product-specific facts whatsoever, Maybell's FAC provides specific factual allegations about the ProteoxQX's specialized design, Defendants' own marketing materials describing modular architecture and multi-unit scalability, and the narrow commercial market for such technology. That is precisely the factual grounding absent in those cases.

Defendants' reliance on *In re Bill of Lading* for the no-substantial-noninfringing-use argument (*see* Motion at 4) also misreads that decision. The court dismissed the contributory infringement claims because the accused components had dual purposes, one of which was *indisputably non-infringing*. *Bill of Lading*, 681 F.3d at 1338. By contrast, the ProteoxQX has no substantial use outside of dilution refrigeration applications. Moreover, the *Bill of Lading* court held that "to state a claim for indirect infringement, a plaintiff need not identify a specific direct infringer if it pleads facts sufficient to allow an inference that at least one direct infringer exists." *Id.* at 1336. At the pleading stage, prior to discovery, Maybell is not required to know which customers Defendants have provided with the components of infringing multi-unit

---

[1] *PPG Indus. Ohio, Inc. v. Axalta Coating Sys., LLC,* No. CV 21-346-LPS-SRF, 2022 WL 610740 at *3 (D. Del. Jan. 26, 2022) ("[T]he complaint provides no factual basis for the court to discern why it is plausible that the Accused Products have no substantial non-infringing use."), report and recommendation adopted, No. CV 21-346-LPS-SRF, 2022 WL 611260 (D. Del. Feb. 18, 2022).

[2] *AgroFresh Inc. v. Essentiv LLC*, No. CV 16-662-MN-SRF, 2018 WL 6974947 at *6 (D. Del. Dec. 27, 2018) ("[T]he FAC fails to sufficiently allege that TruPick has no substantial non-infringing use. Courts within this district have held that reciting this element of the cause of action, without more, is not sufficient to survive a motion to dismiss under Rule 12(b)(6)."), report and recommendation adopted, No. CV 16-662 (MN), 2019 WL 350620 (D. Del. Jan. 29, 2019) ("[T]he FAC fails to sufficiently allege that TruPick has no substantial non-infringing use. Courts within this district have held that reciting this element of the cause of action, without more, is not sufficient to survive a motion to dismiss under Rule 12(b)(6).").

systems.  It need only plead facts sufficient to make an allegation of such infringement plausible.

The FAC does exactly that.

> **B.     The Law Does Not Prohibit the Same Product From Simultaneously Directly Infringing and Serving as a Contributory Infringement Component.**

Defendants' categorical legal premise—that the same product can never simultaneously

directly infringe and serve as a component for contributory infringement purposes—is wrong as

a matter of law.

The Federal Circuit squarely addressed this question in *Ricoh Co. v. Quanta Computer,*

*Inc.* 550 F.3d 1325 (Fed. Cir. 2008).  The court held that § 271(c)'s language "applies not only

to the bare sale of an infringing component, but also the sale of that component as part of a

product or device." *Id.* at 1337.  While *Ricoh* involved a component bundled within a larger

product rather than a standalone product also used downstream as a component, the underlying

principle is the same.

Applying *Ricoh*, courts have held that the overlap between direct and contributory

infringement theories based on the same accused product is not fatal to a § 271(c) claim at the

motion to dismiss stage.  In *Conair Corp. v. Jarden Corp.*, the court rejected the argument that

contributory infringement could not be shown where the accused product was both the directly

infringing product and the component used by customers in an infringing combination.  2014

WL 3955172 (S.D.N.Y. 2014).  The court held that "the fact that [plaintiff's] contributory

infringement claim is essentially a 'repetition' of its direct infringement claim, is not fatal

provided that the contributory infringement claim is otherwise adequately pled." *Id.* at *5.  The

court further found that the defendants had "cited no authority, and the Court has not uncovered

any, suggesting that this distinction—i.e., whether the mere sale of a component itself also

constitutes direct infringement—is relevant to a defendant's liability for contributory

14

infringement stemming from its customers' use of the component for their own direct infringement." *Id.* That reasoning applies directly here.

Defendants' argument would lead to the untenable result that any modular product that directly infringes a single-unit claim would be forever insulated from contributory infringement liability regardless of how customers integrate it downstream. *See Ricoh*, 550 F.3d at 1337–38 (rejecting argument that defendant could escape § 271(c) liability by "embedding that [component] in a larger product" and warning that under such a rule, "evasion of the protection intended by Congress in enacting § 271(c) would become rather easy").

**C.      If the Court Finds Any Deficiency, Leave to Amend Should Be Granted.**

Finally, notwithstanding the above analysis, if any aspect of the FAC's contributory infringement allegations is found insufficient, dismissal with prejudice is not warranted, but rather leave to amend should be granted. Defendants rely on *Boyd v. New* Jersey for the proposition that Maybell's alleged failure to cure the alleged deficiency in its FAC renders further amendment futile. Motion at 6. But *Boyd* is inapposite. In *Boyd*, the district court had specifically identified five discrete deficiencies, and the plaintiff cured only one of them on amendment. *Boyd v. New Jersey Dep't of Corr.*, 583 F. App'x 30, 31 (3d Cir. 2014). Here, by contrast, the Court never identified any deficiency at all. To the contrary, in response to Defendants' original motion to dismiss, which claimed to have identified a pleading deficiency (stated in fairly general terms), Maybell took the initiative of amending its Complaint by adding specific factual allegations regarding the integration of the ProteoxQX into larger quantum computing systems, Defendants' own marketing materials and product documentation describing multi-unit configurations, and the specialized nature of the product's commercial market. Whether those additions are legally sufficient is the question currently before this Court, but plaintiff certainly has not ignored any expressly-identified deficiencies as in *Boyd*.

15

Accordingly, if the FAC were found insufficient for some reason, Maybell should be granted leave to provide further factual detail. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"). This principle is illustrated by the cases Defendants themselves cite. Even where courts dismissed contributory infringement claims for insufficient pleading, they did not do so with prejudice. *See, e.g., Bench Walk*, 530 F.Supp. 3d at 494 (recommending dismissal without prejudice and granting leave to amend because "it is not clear to the Court that allowing the opportunity to amend would be a futile act" and "this is the first time the Court has found Plaintiff's claims to be deficiently pleaded"); *HSM Portfolio*, 2014 WL 4468088, at *1 (granting leave to amend contributory infringement claim despite pleading deficiency). Defendants offer no basis for a harsher result here. No scheduling order has been entered, discovery has not commenced, and no deadlines have been set. Defendants will suffer no prejudice from amendment, and the underlying legal theory is sound. Dismissal with prejudice would be premature.

## VII.   CONCLUSION

For the foregoing reasons, Maybell respectfully requests that the Court deny Defendants' Partial Motion to Dismiss Maybell's contributory infringement claim. The FAC's allegations are legally cognizable and factually sufficient to state a plausible claim for contributory infringement under 35 U.S.C. § 271(c). Defendants' own marketing materials confirm the plausibility of Maybell's theory. At the pleading stage, nothing more is required.

16

Respectfully submitted,

OF COUNSEL:
Michael A. Albert
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue, 23rd Floor
Boston, MA 02210
(617) 646-8000

Mark J. Consilvio
WOLF, GREENFIELD & SACKS, P.C.
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 571-5001

Dated: March 6, 2026

*/s/ Andrew E. Russell*
Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
Virginia K. Lynch (No.7423)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawkeller.com
glynch@shawkeller.com
*Attorneys for Plaintiff*

17